Good afternoon, everyone. We'll have a Zoom argument in Deer Creek Water v. City of Oklahoma City, 21-6155 and 21-6164. Paul indicated to me that I think since there's a cross-appeal that the city had requested to have one minute of server bottle. Mr. Bain, is that right? Yes, your honor, it is. Okay, so that's fine with me. I do want both sides to have equal time, so I'm going to get in the interest of the quality of time, I'm going to give Mr. Glester a total of 16 minutes, obviously, to include whatever time you were to reserve for a bottle. I understand Mr. Butcher and Mr. Bain will be dividing your time, and I know you all have an internal plan to divide up your time, but that time is yours, and that will include the time that Mr. Bain has sought to preserve for his server bottle. With that having been said, we'll hear from Deer Creek. Mr. Glester, the podium is yours. Thank you, and may it please the court, in adopting Section 1926, Congress chose to promote the development of rural water systems and determined to protect indebted rural water associations, their customers, and their lender from curtailment or limitation by an impinging municipal corporation. Section 1926B is designed to protect the association from an ever-expanding city using its annexation of property to provide water service to the Rural Water Association's service area and to customers in that area. That's exactly what happened here. The trial court order, however, turned Section 1926 on its head. Let me just interrupt you on that point, since you're right there, which is the statute says, by inclusion of the area served by such association. What is the area here, and what makes it so? Well, the area in this particular case is essentially a quarter section of land of almost 160 acres. Oklahoma, what is the extent of Deer Creek's service area? Oh, it covers portions of four different counties, but in this particular situation, we're talking in Oklahoma County where Oklahoma City is located. What defines it? I know what defines it for a water district. I'm not sure for an association. Is it simply where you have provided service in the past and are providing service? Well, essentially, yes, but let me just add, a rural water corporation does differ from a rural water district. A rural water district is a governmental entity. A rural water corporation is a private entity. Rural water districts in Oklahoma are given, for the most part, fairly defined, strictly defined service areas. In this particular case, this rural water corporation service area, I mean, we can talk. I'd be happy to talk about what it looks like in some of the other counties. I'm not interested, and we have limited time, but I need an answer to the question. What if the Bolings had just had a half acre lot, and the 50 and other 40 some acres, the 100 acres, didn't belong to them? Would you still contend that that 100 acres was part of Deer Creek's service area? Well, I don't know. It's a bit counterfactual here, because what we do know here is that this particular piece of property was being serviced by Deer Creek since its founding in 1970. You're talking about the home, though. You're not talking about the 100 acres. No, I'm talking about the full 150 some odd acres. Can you describe what the service was other than to the home? Yes, I believe even today, I think there are four other meters on that piece of property. And they go into, whether it's into the fields or into other buildings on that piece of property. But this property has always been part of the service area. And frankly, everybody in this case has known that the entire time. I mean, the Bolings knew that, the city knew that, and there's ample evidence in the record that shows that. Okay, thank you. I don't want to chew up all your time, so go ahead. Well, and so what I was starting to say is that the trial court order turned Section 1926 on its head. It ignored the act of curtailment that Oklahoma City committed that led to the filing of this lawsuit in the first place. And instead, essentially orders Deer Creek to make a choice that it shouldn't have to make. Either to cede its protected area or to install all the necessary infrastructure without any commitment by the Bolings ever to use Deer Creek water. And without a clear statement by the Bolings of what they wanted on this property, what they wanted to do in developing this property. They didn't request water service. They did file an application for water service, which was their means of trying to figure out what the cost would be to have water service, Deer Creek water service there. But they never requested water. Sorry, counsel. Sorry, I'm trying to unmute here. Did you kind of give up the issue of whether they actually filed an application by assuming that at least through this litigation that they did file an application that that was sufficient? The first part of your argument, it seems you've kind of given up, which is that they didn't file an application. That's what that is what Judge Park said. I think Judge Park is incorrect about that. Let me read to you exactly what what was said in the summary judgment briefs. It was said that nevertheless, despite the fact that the Bolings have wholly failed to request water service for country colonnade from Deer Creek, Deer Creek has assumed their participation in this lawsuit is such a request and has made service available to country colonnade through the May 1, 2020 report of its engineer. All that says is no, they never did request water service and the application isn't what's necessary. What's necessary is a request for water service. So why if what should Mr. Butcher, so that he'll know next time what to do, what should he do on behalf of a client who does not want a private corporation to Deer Creek to provide water service and he wants an adjudication because Deer Creek is insisting that they are the only provider that can provide water service for this development. So it seems a little odd for him to say I want to apply for water service because that's that's 100% the opposite of what he wants. Well, according to this court's precedents, what's necessary and other circuits precedents. Also, what's necessary is a request for water service. Why is that necessary? Well, Deer Creek is going to have to spend a lot of money to install to install this type of infrastructure. I mean, several hundred thousand dollars if there's not a commitment to accept the water service. What's the point of putting in this type of infrastructure? I mean, then we're building a infrastructure to nowhere. Okay. So so in the future, when he wants an adjudication that that he can go to the city and not Deer Creek. So Mr. Butcher should tell his client. Well, we don't have any choice. We have to apply for water service. Deer Creek will then have us spend a little over a million dollars putting in the infrastructure and then we can go to court after we spent this million dollars and ask a district court to do something to allow us to use the city, which they never would have had to implement this infrastructure. Because now we've done what your creek wants us to do. That just seems very odd. Well, I think that the whole issue and I'm sorry to ask such a long question, Mr. Lister, but what seems to me is that the whole issue has sort of morphed into something that nobody really believes. The question is, under page 1203 of Sequoia County, whether or not Deer Creek has made water service available through pipes on the ground, demonstrating that it is adequate facilities within or adjacent to the area to provide service to the area within a reasonable time after a request for service is made. And so what Mr. Butcher has done is said, OK, well, Mr. Myers, this is what this is what we want. And if we make a request for service, what will it take? What will it be so that we can determine whether page 1203 is satisfied or not? They've clearly done that through Mr. Myers report. So it seems that that your request is is really asking them to to to to seek something that is the opposite of what they want for no reason. Well, I think there is a reason you're required. Yeah, I think I think that's exactly the reason. And who required it is Congress. Congress adopted the statute in 1960, 61, excuse me, in the first year of the Kennedy administration. The whole point of this is to promote rural water development, to have water available for people that otherwise don't have potable water available and have to travel miles to get to get water. And Congress made a determination that you might not like. I may not like the bowling's, may not like. Nobody may like it, except, of course, I think the people that are being serviced to don't have didn't have water available, do like it. And yes, it sets up a monopoly situation. So so be it. That was Congress. That's what Congress did here. And that's what the courts have all uniformly set is Congress set this up this way for for a reason. And it may be too bad for for somebody like the bowling's who don't want to use rural water. In this particular case, they never asked anything. They just went and connected to Oklahoma City. So before we get into the facts much more, because we have limited time, I want to circle back something you said, which is Deer Creek is going to be expending the money. But as I read the district court order, he is emphatic that the court's concerned with the fact Deer Creek is requiring the bowling's to construct and goes on to repeat that. My understanding is Deer Creek is telling the bowling's here are all the requirements that you're going to have to meet for us and you're responsible for constructing. They're responsible for paying. So what is the bet about Deer Creek paying? Well, that's what the trial court order says, is that Deer Creek had a duty to go ahead and stick this infrastructure in that the bowling's don't even want. And without doing that, by not doing that, Deer Creek somehow has given up its rights. What if they do want it? Are you saying that Deer Creek would indeed construct it? No, I'm not saying that at all. So the bowling's, the district court's correct that you are going to insist that the bowling's construct the water line and incur the expenses if it wants to develop its property. Yes, just like any other entity providing water service would do, just like Oklahoma City does under its rules. You said that in your briefs, but the difference is Mr. Mann is not invoking 1926B. I mean, another water provider can do whatever they want. The question is, under Sequoia County, as I understand it, has, have you, because Mr. Mann's not asking for it, demonstrated that you have adequate facilities within or adjacent to the area to provide service. Mr. Mann in the city of Oklahoma City can do whatever they want. You know, Tulsa can do whatever they want until they invoke 1926B. Your Honor, and I would like to reserve about three and a half minutes of my time for rebuttal. But I'll say, I will say this, that 1926B is designed not to protect the bowling's, not to protect Oklahoma City, but to protect Deer Creek and its customers and its lender. And it's not, there's nothing in the statute that says, well, to get that protection, you've got to go borrow the money or that you've got to go pay the money or anything like that. So it doesn't matter what Oklahoma City is doing or isn't doing. I'm making the point, though, that every water provider does exactly what we're talking about here. It contemplates a lender, though. The whole idea of 1926 is there's a loan. That's what enables the water to be delivered. You're cutting that out. You're saying we don't have to get a loan. Bowling's have to pay for it. And they're all under 1926. In other words, we'll take the sweet but not the sour. I completely disagree with that. Section 1926 does not require, and the other circuits, every other circuit that's dealt with this issue has been clear on the point. Section 1926B does not require the borrower to borrow money for that specific project. I really would like to keep the rest of my time for rebuttal if I could, please. I agree with your statement. That doesn't address my point, though. But I understand your time. Thank you. Paul, let's stop his clock at 249. So we're not interfering with your rebuttal. But I do want Judge Phillips to be able to fully exhaust his exchange with you because we have to decide it. So, Judge Phillips, do you have any follow up? No, because I think we'll just go around and around about the issue of there needing to be a loan in general as opposed to 1926. So I'll just cut it clean where I have it. May I briefly respond? Yeah, you sure can. I don't know that he has anything, but sure. Well, we do have loans. That's a given in this case. There's no issue about whether there are loans. Understood. I don't dispute that. Okay. Thank you. Okay. Judge Moritz, do you have any? No, I'm fine. Thanks. Okay. Thank you. So, Mr. Mann or Mr. Butcher, I forget which one of you are going first. I intend to go first. Okay. And for the court's benefit, I intend to leave about 10 to 11 minutes for Mr. Mann to address the various issues that the city is raising. So I realize it's up to me to stop, but just so you know, my intent from the start. That's fine. Go ahead. Okay. May it please the court, Scott Butcher on behalf of the landowners, Tom and Gina Bowling. All that the court needs to do to affirm in this case is to apply the pipes in the ground test as it's written. If Deer Creek wants to be the water service provider for the development, they have to have adequate pipes in the ground to provide service within a reasonable time. It's undisputed that they don't have adequate pipes in the ground in order to do that. And it's undisputed that they won't actually do anything in order to make water service available to the Bowling's property. But you counsel, you didn't even give them an opportunity to provide that service. They have to have a reasonable time to provide pipes in the ground. They were never given that opportunity. You cut them right off and went through without their knowledge, even in their area and dealt with the city. And all of that was done, and it was done before they even realized it was happening. I'm not sure how you can say that they don't have pipes in the ground or can't do so within a reasonable time. That's really a fact question that we haven't even got to yet. Well, there's given the opportunity. I don't dispute that the Bowling's connected to Oklahoma City before the lawsuit was filed. They were unaware of the statute or any requirement that might force them to try to go to Deer Creek beforehand. They made that connection. I don't think Oklahoma City was unaware of the statute. They were unaware that Deer Creek claimed to serve the Bowling's property by virtue of the fact that they had already annexed it. But that connection was made. But nobody now suggests that annexing the property has any legal relevance at all, right? No, not in legal relevance. It just explains how the city went ahead and allowed the Bowling's to connect before raising this issue, how the issue came about. And then once Deer Creek filed the lawsuit and sought a TRO to try and shut off the water to the Bowling's property, at that point, we said, okay, I submitted an application with the application being to tell us what your terms of service are. You also made it very clear, didn't you, in that application that you had no intent of actually this being a real application in the sense that this was really more for litigation purposes, just as Deer Creek assumed it was for purposes of litigation. You made it very clear that you had no intent of submitting a real application, which is required. They acknowledged at the opening hearing that the only thing required to apply was to submit the application and the fee, which we did. The intent of the cover letter was just to say, look, we're not conceding that you are the service provider for this project just by submitting the application. I've dealt with enough arguments from Deer Creek to know that I needed to be very clear that I wasn't conceding anything. Well, assume you get past that issue and assume you get past whether there actually needed to be a separate application before you ever dealt with Oklahoma City and they did everything they needed to do and you already got that done. Assume that this was a separate application or whatever it needed to be under the statute. What's your argument then as far as why they didn't at least provide a plan or a reasonable plan for providing the service that you needed? Oh, their plan was to do nothing. I mean, they can see that their plan is to do nothing. The entire crux of their plan and their policy is set up to ensure that they won't do anything or take any risk or any responsibility. Which is entirely what they're entitled to do, isn't it? I think that's what the dispute is over. If Deer Creek wants to insist and demand to be the water service provider coercively through enforcement of this statute, they have to accept the responsibility to actually show... Congress didn't intend for 1926 to have anything to do with coerciveness. There wasn't supposed to be a choice. The whole point is if it's their service area, they provide. If they can do so in a reasonable manner for a reasonable cost, and those are fact questions. There's not supposed to be a choice in this situation. It's not up to the developer what they want to do. Well, that's what I meant by being coercive. If the landowner doesn't have the right to make decisions about their own property, I think that is being coercive. Well, but that's what Congress provided for in this whole scenario. That's the point of a rural water district. That's the point. There's no choice to the developer. But what the statute protects is service made available by the district. If the district wants protection, it's conditioned on the district actually providing service. That's why the pipes and the ground test is focused on whether or not the district is in fact making service available on the ground. So now, didn't Oklahoma City, didn't you also pay to have the services provided or the pipes put in the ground, the infrastructure? Didn't you also pay for all of that through the city too? Well, not for all of that. We paid for the boarding underneath the road to connect to the main that was on the other side of the street. Yes, we paid $30,000 to do that. That's it? But the Oklahoma City didn't sue us to force us to do it. We did it voluntarily by agreement. The pipe was there. The pipe was there. Right, the pipe was there. The city didn't try to stop us from buying water from the city of Edmond or from another rural water district provider who were also out there and could do it. We voluntarily agreed to do that. I understand. I mean, I guess I understand why you're, obviously, why you would want, the buildings would want to connect with the city. I just am failing to see why there's any case law to support the idea that it's their choice in this scenario. The case law that it would be their choice as to decide who the water provider, I mean, there is no defined service area for Deer Creek. No one sets a boundary for them or that would put anybody on notice that like, okay, you are required to go to one owner or the other. You're generally under contract or free to contract with whomever you choose. They could agree to go to Edmond. They could agree to Oklahoma City. They could agree with anyone else who's willing to provide service to them on whatever terms the parties could agree to. Just the same as anyone else is free to contract for any services in any other context. It's Deer Creek who's trying to demand that they will be the service provider and that no one else be allowed to provide service. And yet, at the same time, they acknowledge that their infrastructure is wholly inadequate to actually provide the service. And they have except no responsibility in order to make that service available at this time. And I think the statute, because its protection is conditioned on service being made available, requires at a minimum that Deer Creek do something to make service available. And that is all this court needs to hold as a matter of law to affirm the judgment that was entered in this case. And with that, I want to go ahead and stop because I do want to leave the rest of the time for Mr. Mann and for the city to address your questions. Well, one real quick question, which is, is your position that Deer Creek has to be willing to undertake the construction itself before it has made the water available? Ordinarily, what would happen is the water service provider would either borrow the funds and then recoup up front to construct that and then recoup that over time through its race. That's what was happening in Belle Arthur. That's what's happening in Green Valley. I understand that. But my question is, do they have to do that? Do they have to do the construction or they can't avail themselves of 1926? You might be able to create a fact question about whether or not they were doing what they had done had were sufficient to be making service available. They were willing to have done something, anything at all, but they're not willing to even do anything. And the consequence of that is that they're it collapses the entire. OK, well, we're chewing more time and I don't mean to do that to you. I thought I thought you'd tell me that they need to construct. And you're saying that you're not saying that. So I assume they don't need to construct. And in order to receive the I don't think they need to build it in advance, but I think that that you have to evaluate those terms. And so I want to concede the rest or save the rest of time for Mr. Mann. OK, Paul, let's go ahead and stop this clock. And again, I do want to be able to finish the questions because we do need to decide it. Just Phillips. Do you have any additional questions? Furbish butcher. I guess I do not. Thank you. OK. Judge Moritz, do you. I'm fine. I'm good. Thanks. OK, before we turn to Mr. Mann, Mr. Mann, are you know, you have obviously the cross appeal. Are you also going to address the issue that Mr. Butcher is talking about, whether or not there were pipes in the ground under Sequoia County? Oh, you're on mute. I got it now. I think I'll be happy to. And I think that since that's where Judge Phillips left, I will try and answer that and and then move on into my argument. OK, well, I don't want to mess you up. The reason I asked is I didn't want to take away from your time. But I did have a question that really involves both your arguments and Mr. Butcher's. And it really has to do with the way the judge Paul on his second ruling adjudicated this whole pipes in the ground test. He had he adjudicated it by denying Deer Creek's motion for summary judgment and grant granting the bowling's motion for summary judgment. But I wonder whether or not the way that the Myers report articulated what Deer Creek was going to do actually creates a genuine dispute of material fact. There's nothing in Sequoia County or any of these other cases that actually require the water provider to construct a facility. I think that's that according to your argument and Mr. Butcher's, that's implicit in Sequoia County under the pipes in the ground test. But in terms of, you know, some of the terminology through the quotation of the Bell Arthur in Sequoia County, whether it's a reasonable time, whether or not this is a request for service is obviously the extended colloquy, you know, creates a question. Is that a disputed issue of fact? I wonder if if if the district court erred in deciding this as a matter of law through summary judgment, maybe he could have done exactly the same thing through a bench trial through findings of fact. But I wonder if he erred by overlooking the existence of genuine issues of material fact in the satisfaction of Sequoia County. What do you think, Mr. Butcher? I'm sorry, judges, to interrupt. Can I start that timer back up? Or would you like me to repeat? Oh, sure. As long as you don't ask me to repeat my question, Paul. Sorry to interrupt. It's OK. Am I on now? You're on. All right. I think that it is it is at the very least implied that under the act, the 1926 act, if you're going to take out federal loans, which the express purpose of that act is to enhance your water system so you can lower the cost and the the production costs to your consumers. That means you better have water available. And that is the pipes in the ground test. So notwithstanding the Sequoia case interpreting Bell author, I think the Bell author case of North Carolina is exactly on point to this. If you are going to take out federal loans, which Deer Creek doesn't dispute, they've got the federal loans. I'm assuming it's sitting in the bank somewhere. They are not going to use it to enhance their system, which in their motion for their preliminary injunction, they said they needed to get this property so they could get the benefit of the additional customers in the in the water pressure. So I think that is at least implied. I think Judge Park did the right thing as a matter of law. And it gets it kind of begs this issue of of is there an application by Deer Creek when Debbie Wells, general manager, and this is in the record, testifies that she became aware that they were planning a development over there in the country. thing that she demanded that they take that the bowling to take water from Deer Creek demanded and that they make an application demanded that they take water. Deer Creek sued them almost within, I think, two or three months. I think you cannot demand somebody do something then then cry about the fact that they didn't ask you to provide water. Their whole point of their lawsuit is you have to take water from us as Deer Creek from Deer Creek, whether you like it or not. So this application thing, I believe, is a ruse. Sorry, counsel, that's not exactly right. I don't think they say you have to take water from us. I think they understand that they have to provide it within a reasonable time and a reasonable cost. And those are the fact questions that are remaining. But they certainly do not say that you have to we get to provide water to you at any time, at any cost, just however we want to. That's never been their position. I think you're misrepresenting it by suggesting that it is. I think the purpose of their loss is when they say the city poached the bowling property from them. So they say repeatedly that we taken their their person in an ambiguous water service area that the city had previously annexed. I'm not getting into the annexation resolves all these issues. I'm not saying that at all. I think that a lawsuit is they have to protect their protected area, what they claim is a protected area. And that means we are giving you the water and you are not allowed to get it from the city. I don't think that's a misrepresentation at all. Essentially, they have to. They're saying they have to be given the option and that they were that didn't happen. I think the fact that they demanded they take water to me is the same thing as saying we don't care whether you apply. You're taking water from us. And here's our federal lawsuit to tell you that. And the city cannot give you water, which in the very first preliminary injunction hearing, they agreed. The city agreed with me standing there saying we will not turn on water to this development until Judge Park says it's OK. Which other than charging the lines to test them has never been done. And then Judge Park's position was this is two and a half, basically two and a half years removed from the date they filed that lawsuit. If that's not a reasonable amount of time to do something, which they're their own expert says we we are. We are not doing anything. We've not done anything. We've not broken any ground. We're not doing anything to move this, notwithstanding the fact that they have a federal law out there that they're taking a loan under. That says if you're taking out loans from us to enhance your water system in a scenario, this would be the bones of the perfect situation for them to say, we've got money in the bank. We took out a loan for and we're going to enhance this. It is not a situation of a road or a pipe to know where it's Mr. Lester said they want they Deer Creek refuses to run a line one point three miles to the bowling property that they are. I think they're absolutely demanding that they take water from Deer Creek from the Deer Creek facility. So why do you say it's not a protected area? Because the we do not believe that that and this is the argument consistent with the city's cross appeal that under the law, they are not a protected entity because the state of Oklahoma. OK, I understand. I don't want to drag us into that. That's part of my cross appeal, though, so I appreciate the fact that I understand. I don't want to get right into it either. But maybe they're not a protected entity. And they do not have one of your first questions. Judge Phillips was what is the area? And Mr. Lester says essentially the same thing that Debbie well said when she was on the witness stand. That's our general manager. You cannot find the Deer Creek boundaries on any map anywhere. It is an ambiguous, amorphous just thing that they want to be able to provide water. What about what about Mr. Lester's point that they're they're been servicing that area, the 100 acres, I assume, with water for fields and so forth? I don't believe that's accurate. They have a two inch line down there. That's all they had prior to this event. And it went to the house. I think that my recollection was a record will indicate the other structures were either an old barn or were torn down. And their own expert says that two inch water line will not service that that 100 acres. Because it's undivided property that the Bullens have. I'm sorry, Judge. Well, it's undivided. You know, let's say they have 91 acres and let's say they only have been because my understanding had been like Judge Phillips until Mr. Lester had said that, that it was just that farmhouse. But let's say let's say it is just that farmhouse. Well, they're only supplying through that two inch main a minimal amount of water to the farmhouse. But on the other hand, that's all that's all undivided property owned by the Bullens. So they have technically been supplying water to the entire property that the Bullens own because it hadn't been divided into lots yet. Well, and I appreciate that serving that one section, but their own expert says it will not be sufficient to serve the, the provided development. And if that's true, then why do they keep demanding the Bullens apply for water from Deer Creek? That seems to be counterintuitive that if we're serving you, then why do why this this force of you have to have an application for us. And get an application from the Bullens to them for an additional area that they now are claiming actually will serve that property when their own expert. And I think two of his four affidavits and from the witness stand in one of the hearings, a Daubert hearing said it is not sufficient. And we know it's not sufficient. It's got to be their six inch line, a nine inch line or a 12 inch line, depending on what they're going to provide. And they know that they can't get that. They do not have the pipes in the ground for that. So they do not have they do not make and I'm sorry, I'm going past my one minute rebuttal time. So I'm going to reserve the last five seconds if that's all right with everyone. Well, I will say that I cheated you on purpose. I inadvertently cheated you because when I asked my last question, I failed to look at that clock. And if I had seen it, I wouldn't have done that. So I am I'm going to give you one minute. But I'm because I'm King Solomon today. I'm going to give Mr. Lester another minute. So so you have you have your you have your minute of rebuttal. But I do want my colleagues to be able to ask their questions. Judge Phillips, you're not taking away Mr. Mann's time. Do you have any questions? Not for Mr. Mann. No. OK. Judge Morris. No, thank you. OK. I think we're down to Mr. Lester. No. Oh, we're. I think we are. I think we're a new rebuttal. Yeah. Ready for Mr. Lester's rebuttal. OK. Oh, you're muted, Mr. Lester. Yeah. I'd like to first thank you. I'd like to first respond to a couple of points. Jeffrey did not sue Bowling's. Lawsuit, Jeffrey. The lawsuit is against Oklahoma City. Yes, I think there are issues of material materialist, the fact that it precludes summary judgment against Deer Creek. I do think that there are no issues of the fact that it would preclude summary judgment in favor of Deer Creek. I'd be happy to talk about that, but probably don't have a whole lot of time to do that. There's a lot of discussion about application versus request for service. The application is simply a means of being able to determine and send to an outside person what the requirements will be to services property with the proposal. In this particular case of the proposal that was made was for ninety one to one hundred homes. Since that time, the proposal has changed a couple of the time that at least the last that we knew was for two hundred and seventy homes. What there has never been is a request for service. Why do we need a request for service? Because we need to know what it is that we're going to be committing to to do. What the trial judge said, unfortunately, is we needed to somehow define what it was that the bowling wanted and go ahead and install that, even though they never made a request for service. And they never, ever requested service. They were clearly did not want Deer Creek service. They've been clear about that throughout. Well, the district court relied on your unwillingness to construct no matter what the contingencies. Right. So it really didn't matter if it's two hundred or eight hundred or a thousand. You're saying you're not going to do it. And the district court says if they're not going to do it, then it's not making water available. I would agree with the district, Your Honor, that the district court seems to say we have to go. We are the only apparently the only water entity in the world that has to go ahead and put those things in ourselves. Do you have a case? Is there a case anywhere that says that an association like this one can put all of the onus on the developer to do all of the work to finance the lines and then sign it all over to you? Is there such a case out there? Yes. The pit seven case from the first version from this circuit said requiring the customer to put the bill for basic utility infrastructure is not entirely heard of, at least in regards to new developments. That's the cost. But that's Mr. Lester. That's the cost. And as Mr. Butcher pointed out, we're not talking about the cost. We're talking about the onus of construction. Yes. And then there's the Mid-Continent Builders case, which is an Oklahoma Supreme Court case that, again, talks about this very point. But here, again, the focus, and this is where I think the trial court made its mistake. The trial court focused on the effects on the bullies. I understand that that might be a great thing to do in certain circumstances. But in this particular case, it's not because the statute, the statute that Congress adopted, the statute that we all have to live with, is section 1926. And it doesn't put the onus on the Water Association or anybody else who's providing water to do the construction work. Why doesn't Sequoia County do exactly that on page 1203? Because all it says is that you have to make water available and either the pipes are already there or it has to be installed in a reasonable time. It does not say that the Water District has to do it itself. Well, isn't that implicit? I mean, you know, it's not like the pipes are going to just magically appear down on 192nd Street. You know, somebody's going to put them in. No, I don't think it's implicit at all. To the contrary, I think the statute is very clear. This statute is meant to protect rural water districts, to help them grow. This order is designed to make sure a rural water district will never grow where a city is. That's its purpose. I guess I'm out of time. I'm not sure I got the extra minute. But if I have a second to comment on the process appeal, I've got about 15 seconds to say. All right, I'll give you 15 seconds. We did give you an extra minute. I don't want you to think we cheated you. The 15 seconds should suffice. You already decided the issue in the cross-appeal. I mean, you did it in the Glenpool Utilities case. You did it in the published Pit 7, the Pit 7-2 case. You decided both that the Tenement Amendment doesn't require this and that the spending clause doesn't apply, that this statute doesn't violate the spending clause. May I ask just one follow-up? Sure. And that is, I'm left in confusion on this point of area service. Because the way you described it, sounds like water is being spread out throughout the whole 50 or 100 acres. But that's not accurate, I gather, from Mr. Mann. Can you describe it and tell me where in the record I can find that out for myself? Because I haven't seen it. I can't tell you where in the record it is right now. I can certainly submit a letter showing where it is. I know that the Bowlings have at least currently two meters. And I think on the one they are paying only the minimum amount. So a residential use, though, not an agricultural use. It's a two-inch pipe, I assume. I'm just trying to get my hands around what's happening on that property. I'm not sure I understand the question. I apologize. Okay. I'm good. Thank you. You sure? Yeah. Okay. Judge Moritz? I don't have any questions. Okay. I think Mr. Mann has rebuttal. We'll give you one minute. Is that right, Paul? That's right, Judge. Okay. Thank you. I believe that the 1926 does put the onus on Deer Creek because they took out federal loans to enhance their water system. The express purpose of that act puts a burden on them to get reasonable water available. And the way the court tests that, which is exactly what Judge Pollack did, is do you have pipes in the ground? The other thing, and this is consistent with not only rebuttal, but I think our cross-appeal, Deer Creek, this situation does violate the spending clause because the state of Oklahoma never, never authorized water corporations like Deer Creek to get a federal loan. They only authorize water districts. That's a different thing. What is it about the 10th Amendment or the New York case or the spending clause that requires something beyond 863? 863 does allow Deer Creek to, as a private, a non-profit corporation to borrow money. And you argue in your reply on your cross-appeal that, well, it doesn't, what you just said, that it doesn't explicitly authorize them to obtain federal loans. But, you know, let's say we write an opinion. If we, if we say that, what do we cite for that? Because I didn't see any authority. I think, I think you cite the specific statute, controls over a general statute, such as the one they keep citing, the two that they keep citing saying, well, Jay, we're a corporation. So we essentially get to do what we want to. And the state has no say over it, as opposed to a legislative act by the state of Oklahoma says you can get money from the federal government. You can take out these loans if you form as a water district. And this, and this is the, where I'll stop. This country has existed on a system of checks and balances. There are none on Deer Creek as it stands now. They don't even have to go to before the board of County commissioners to form a water district, consistent with that statute that I just mentioned to have a boundary established. So this is going to be a tremendous waste of judicial resources. The next time that this city of Oakland city butts right up against Deer Creek, this is going to be enormous waste of judicial resources because the board of County commissioners would draw a line in the sand and say, this is Deer Creek property. And the city can't push it. We do not know that. So we will be in another lawsuit. The next time that this happens again, and it's bound to because we're there right up against each other. So thank you. I think I'm well over my minute. You are, but thank you, Mr. Man. Jay Phillips. Want you to be able to answer, ask whatever questions you have. No, I have none. Thank you. Okay. I'm good. Thank you. And I hate to do this, but I just have one question. And I don't think it's an argumentative question. And I think both it's really, it's really any of the three of you that want to answer it, can answer it. I've never fully understood why this is a cross appeal. It does seem to be that. I mean, obviously in the first order, judge Paul denied the city's motion for serving judgment. And that I've assumed that you filed a cross appeal because you don't like that ruling. But the city obtained judgment. I mean, I've never really understood how this is a cross appeal when, when judge Paul granted this for the bowling's motion for summary judgment. So. I never really understood how this is across appeal as opposed to what a permanent, so not alternative ground. So I've always assumed that this is just an alternative argument to affirm. But. Mr. Man, I, you're probably. You're the one that filed a cross field. So. But if I'm wrong about that. I think that's an, it raises an interesting point. We're completely on board with judge pox order. In favor of the bowlings. However, the city and it's not a question of fact in there on the city's motion for summary judgment, it is simply a. Completely legal points. Deer Creek says they don't have to organize as a water district to get 1926 protection. The city says that we do. And it's a violation of the spending clause and the tip and the interaction with the 10th amendment. And Deer Creek is essentially waiving the sovereignty of the state of Oklahoma to, to establish rules, which is. It's in those Glen pool cases and the Eudora out of Kansas. That says the city can put limitations on. Other things, taking these federal loans. So we're I'm looking at the city's motion for summary judgment. Should have been a firm should, excuse me. Should have been granted by judge park on the legal issues that deer Creek is not entitled to continue acting as a. Water corporation and should form as a water district to avoid this in the future. But the, but the remedy for that argument would be we affirm. Right. You affirm the ruling. You know, we always adjudicate the judgment. And the, and I thought, you know, maybe I'm wrong about that. But it just struck me as unusual to get. Across the field from the party that won saying we want. We want to reverse what you want. We will. I agree. It is odd. I've never filed across a bill before that I can think of. We're happy with the book or excuse me, with the bowling is getting in. Their water. We're on board with that. The city will be happy to provide water. If you say, if this court says so, but by the same token to avoid this, this coming up again, we would like the. The court to revisit judge box denial of our motion for summary judgment on the purely legal issues that are in there that deer Creek is not entitled to this 1926 protection that they claim. I think so. I think the court. Maybe I'm wrong, but the court could affirm Mr. Butcher's. The order on Mr. Butcher's clients and revisit the city of Oklahoma city, But, you know, I don't think that that's something that we should be doing because our motion for summary judgment was denied. Okay. I guess like one. I realized. Cross appeal. But if the, if the district court had granted the summary judgment on the grounds that the city had moved for, it would. Then deer Creek wouldn't have 1926. Be protection on any property at all, I think that's.   And that's a good question because it hasn't been authorized by the state to accept these terms of service from the federal government. Whereas if you affirm the judgment that judge Paul entered, it only concerns the property owned by my clients. And while an appellee can generally seek affirmative on any ground in the record. If the cross appeal seeks to enlarge the rights or whatever you Well, I don't think anybody will quarrel with you that if you're expanding the judgment, but right. You know, but it, and it may have far greater consequences through offensive collateral estoppel or something like that. But the only, the only parties with an interest at stake or the Bolins, the city and Deer Creek. And I think that's probably right, but I could see how as a matter of just conservative to make sure I'm not foreclosed from arguing for the broader ruling that would deprive them of protection entirely, that the conservative thing to do would be at least attempt to file the cross appeal and handle it that way. Yeah. Well, and I'm not, I'm not picking on anybody. I just wonder when we, when we, you know, whether, you know, what our disposition would be if we agree with Mr. Ban on that. I'm going to say we would or wouldn't, but anyway, I've let everybody else weigh in Mr. Lester, very briefly. Do you have anything to add? Obviously I completely disagree with the notion of the cross appeal having any merit. I think that the court's already decided and frankly, the statutes decided to section 1926 could hardly be clear that a rural water association is who has the protected density. And I don't mean to talk over you. We're just in, I don't think there's any merits of it. My question is just whether if, and I realize that, that you're, that your argument is we should just, it's, it's academic because we try to reject it, but in the unlikely event, that we accredit it, what, what is the disposition? I have, I have always thought that you would not need to file a cross appeal that having said that, and it happens to be one of the cases that I cited in the brief in the cross field section. And it happens to be one of my cases. And that was the city of Ponce city of Ponce city case from, I think 1990 or 1991. And I want a motion to dismiss in a Western district of Oklahoma. And part of why I said that should support that motion to dismiss was an argument that the district court rejected that the rest of the Congress should apply and chief judge hallway in a way that only he could do. Asked me what I thought was a softball question. Didn't I have to file a cross appeal? I, I, I remember saying to him all these years ago, no, your honor, I did not have to file a cross appeal. And I can't remember the name of the case. Andrew versus somebody 1968 Supreme court case. I won, but darned if I didn't get reversed based on not having filed a cross appeal, I wouldn't administer man's position. I probably would have filed a cross appeal. Also. I don't know whether it's really necessary. I tend to think it's not. That's not important for me as far as I'm concerned. I hear you. And I am sorry to take it so bad tangent, but it was important to me. Well, before we call it quits judge Phillips, did you have anything else to inquire? No, thank you. Judge Moritz. No, thanks. I'm good. Thanks. Well, I'm, I'm glad to see Mr. Lester looking healthy and, and I hope our friend, judge Moritz, who I want to tell you all is weathered through. She is quite sick and well, no, I'll make it. And, but we can't blame Mr. Lester for getting it from him. Well, thank you so much. And to counsel as well for the accommodation. I truly Friday morning, I tuned in to listen to the first argument and I had to turn it off. I could not concentrate at all Friday morning. Thank you very much. Oh yeah. Well, thanks for saying that, but I appreciate you letting us know. We don't, these are important cases. This is every, as you quoted judge Holloway, another quote, judge Holloway is every case is the most important to the parties and, and, and including this one and, and Deer Creek is well-served by having you as her counsel and certainly a healthy Andy Lester. So we appreciate the excellent advocacy from all three of you. And we appreciate judge Moritz powering through today, even though she's, she's quite sick. In any event, we will adjourn until further notice.